## Case No. 17,760.

### The WILLIAM YOUNG.

[Olcott, 38.] [1]

District Court, S. D. New York. June, 1844.

COLLISION—STEAMER AND SAILING VESSEL—BURDEN OF PROOF—CHANGE OF COURSE.

1. In an action for damages to a sailing vessel by collision with a steamer, the burden of proof lies in the first instance on the libellant.

[Cited in The New Champion, Case No. 10,-146; Messena v. The Neilson, Id. 9,493a.]

2. If the collision is occasioned by an alteration of the course of the sailing vessel, it devolves upon her to prove the propriety or necessity of such movement.

[Cited in The New Champion, Case No. 10,-146.]

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

[2] [Affirming Case No. 17,758.]

[1] [Reported by Edward R. Olcott, Esq.]

3. Each vessel is bound to observe the rules of navigation applicable to their respective positions.

4. The steamer is culpable in crowding upon the sailing vessel so as to render a danger probable in her situation, but is not required to protect her against the consequences of her own mistakes or negligences.

[Cited in The Sunnyside, Case No. 13,620.]

5. In this case, the two vessels being navigated in opposite directions, and approaching each other on lines nearly parallel, and spread wide enough apart to leave a passage safe to each from the other, and the sailing vessel changing her course, without necessity, to cross the bows of the steamer, so near to the latter that stopping and backing the engine did not avoid a collision, she cannot support an action for the damages thereby incurred.

G. A. Bucknell, for libellant.

H. B. Scoles, for claimant.

BETTS, District Judge. This was a case of collision, by occasion of which the sloop Charlotte was lost. The following facts are made to appear upon the pleadings and proofs: The sloop Charlotte was well equipped, and of sufficient strength for the safe navigation of the North river; was on a trip down the North river, a short distance below West Point; came in collision with steamboat William Young, going up the river, with a tow attached to her, when opposite Buttermilk Falls. When the two vessels neared each other, the steamboat was standing in close to the east shore, and running up along it, and the sloop was holding a straight course down near the middle of the river, with the wind N. W. and tide ebb, the breeze being free and sufficient for steering, so that she was enabled to hold that course, or to have placed herself further west, with facility and safety. The channel of the river was half a mile wide at that place. Supposing the steamboat to be varying her direction more westward, the pilot of the sloop changed her course, heading off towards the east shore, beyond and inside of the steamboat. The steamboat had, at the time, the barge Union in tow on her larboard side; she was in the usual channel and route of steamboats ascending the river, and was passing through the water at about five miles an hour. The sloop was running at about the same rate. The steamboat had met other vessels in the vicinity, all of which passed her to the west in safety. The position and course of the steamboat would have carried her one hundred yards east of the sloop, if the latter had not changed her direction and veered eastward. On observing that movement, the pilot of the steamer rang the bell to slow her speed, and hailed the sloop in a loud call to luff, stopping the engines and ringing, also, to back her: and whilst the engines were working backwards, the sloop, heading directly east, crossed athwart her bows, and the collision occurred. There was not room between the steamboat and the east shore for the sloop to have passed safely in that track, if she could have got around the bows of the steamer. Every practicable effort was made on board the steamer by the pilot and men to avoid the collision, after they discovered the purpose of the sloop. The collision was by a slanting or glancing blow, the starboard side of the sloop, forward of the main chains, came in contact with the larboard bow of the barge, which was in tow by the steamboat on her larboard side. The position and course of the two vessels in relation to each other on their near approach, and before any movement was made on either side in apprehension of a collision, afford a strong presumption against the allegations of the libellant and in support of the defence. The master of the Convoy, another sloop in the wake of the Charlotte, proves that the latter was a safe distance to the westward of the steamer, running down the river on a N. W. wind, on a line parallel with that pursued by the steamer. It is palpable that her starboard side could not, in that mode of their approach, have been reached by the larboard side of the steamer, had the latter, as is charged, suddenly altered her course and bore off to the west. The sloop, after the blow, passed directly ahead of the steamboat, and struck her bowsprit on the shore, and receding back from the shock, sunk two or three hundred feet from the place of collision.

None of the witnesses impute any blame to the movement of the steamboat. Some called by the libellant, who alleged the steamer was bearing more westward, admit that if she had kept her way after the sloop changed her course, the collision might not have occurred. The weight of evidence supports the testimony of the pilot of the steamboat, who testifies that he did not change his course, which was to keep close along the range of the east shore. He was steering for North Point off West Point, in order to keep that position off the steamer. Several witnesses state that he was a skilful and careful pilot—that he was on the proper course, and it was easily within the power and the clear duty of the sloop to have luffed; and had that been done, all danger and difficulty in the navigation of the two vessels would have been avoided. The counsel for the libellant, upon this state of facts, insists that the case of Hawkins v. Duchess & Orange Steamboat Co., 2 Wend. 452, is in point, and conclusive against the defence of the claimant. But it is to be observed that the evidence in that case established a want of reasonable precaution, and indeed showed positive, if not gross negligence on the part of the steamer, in holding her own headway, and compelling the sailing vessel to depart from her proper course, or abide the risk of a collision, when she might have prevented it by stopping and backing—the steamer, in that case, being held culpable for omitting to do what was promptly done by the steamer in this.

It is not to be assumed without evidence, even between a steamer and a sailing vessel, that in case of a collision the fault is necessarily with the steamer. Each vessel is bound to observe the established and notorious rules of navigation applicable to their respective positions. In a cause of damage, the party seeking

compensation must sustain the burden of proving the vessel proceeded against was blamable and in fault. That alone founds a complaint for compensation. 2 Dod. 85; 8 Law Rep. 295. Although a higher degree of responsibility is cast upon steamers, and they are bound, as a general rule, to keep out of the way of sailing vessels, yet the latter cannot justify a departing from their course on a probability of encountering an approaching steamer, unless she is crowding so much upon the track as to create an imminent danger of collision. The law requires that there should be preponderating evidence to fix the loss on the party charged. The Ligo, 2 Hagg. Adm. 356. In suits for collisions occasioned by a mischance imputable chiefly to the want of proper care and precaution on the part of the vessel damaged, the action will be generally dismissed with costs. The Catherine of Dover, Id. 154; Bayby, Baron, 2 Cromp. & M. 22; 11 East; 60; 3 Car. & P. 528. I am of opinion that the libellant has failed to establish the facts requisite to a judgment in his favor. He does not prove that the collision happened by means of any fault or negligence on the part of the steamboat. It was brought about by an attempt of the sloop unnecessarily to run across the bows of the steamer, and get between her and the shore, where there was not in fact room for her, and where, under the circumstances, she could not rightfully go. The libel must be dismissed, with costs.